UNITED STATES v. ATCHISON, T. & S. F. RY. CO.

(District Court, S. D. California, S. D.    January 14, 1915.)

RAILROADS ⚏254—OPERATION—SAFETY APPLIANCE ACT—HAULING FOR RE-
    PAIR—"NECESSARY."

    An interstate carrier, which moved from a transfer track to its repair
track, in the same city, a car whose automatic coupling was out of re-
pair, so that a man had to go between the ends of the cars to uncouple it,
is not relieved from the penalty under the Railroad Safety Appliance
Act (Act March 2, 1893, c. 196, 27 Stat. 531), by the amendment thereto
by Act April 14, 1910, c. 160, 36 Stat. 299, § 4 (Comp. St. 1913, § 8621),
providing that, if the safety appliance equipment becomes defective while
in use, the car may be hauled to the nearest available point where re-
pairs can be made, if such movement is "necessary" to make such repairs,
and they cannot be made except at such repair point, where it appears
that the repairman could have gone to the transfer track to make the
necessary repairs, or they could have been made by switchmen if they
had had the proper appliances, since the requirement of the statute that
the movement must be "necessary" will not be held to mean only that it
be convenient or expedient.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec.
Dig. ⚏254.

    For other definitions, see Words and Phrases, First and Second Series,
Necessary.]

Action by the United States of America against the Atchison, Tope-
ka & Santa Fé Railway Company to enforce a penalty for violation of
the Safety Appliance Act.    On trial to the court upon an agreed state-
ment of facts.    Judgment entered for plaintiff.

Albert Schoonover, U. S. Atty., and H. R. Archbald, Asst. U. S.
Atty., both of Los Angeles, Cal.

E. W. Camp, U. T. Clotfelter, and Paul Burks, all of Los Angeles,
Cal., for defendant.

BLEDSOE, District Judge.    This is an action tried before and sub-
mitted to the court upon an agreed statement of facts.    The plaintiff
asks for a judgment of $100, as against the defendant, because of an
alleged violation of the Safety Appliance Act of Congress, in that the
said defendant hauled on its line of railroad, over a part of a through
highway of interstate commerce, a certain freight car, which said
freight car was out of repair, in that the uncoupling chain on one end
of said car was disconnected from the coupler, thus necessitating a man
going between the ends of the cars to couple or uncouple them.

In the agreed statement of facts, among other things not material to
a determination of the cause, it is stipulated that the railway of the
defendant is, and was, efficiently managed and operated in accord with
the best-known custom and usage prevailing among well-operated rail-
ways; that in the city of San Diego, wherein the alleged violation of
the Safety Appliance Act occurred, a certain transfer track, upon which
was situate the car in question, was a little over one mile distant from
a certain track known as the "D street repair track," which latter track
was set apart and used for the accommodation of, and upon which it

was the practice to place, all cars which were in need of repairs of a character which could be made at San Diego; that defendant maintained a regular force of car inspectors and repairmen in its yard at its said repair track, but did not regularly maintain any such car inspectors or repairmen at any point upon the aforesaid transfer track, it being the practice to send a car inspector from the said repair track to inspect cars upon the said transfer track before moving them, and it being the practice to make all repairs which could be made at San Diego on said repair track; that it was defendant's practice to inspect all cars placed upon said transfer track before accepting delivery of the same, and that the car in question, before delivery of the same was accepted, was so inspected and found to be in all respects, as required by the acts of Congress, in proper condition of repair; that after said car had been so inspected and found to be in proper condition of repair, but before it had been removed therefrom, some person unknown to the defendant, and not in its employ, and without its knowledge, aid, or consent, removed from the coupler upon one end of the said car a clevis pin and clevis (being a familiar device and used for the purpose of connecting the uncoupling lever and chain, connected with and constituting a part of the automatic coupler, with which said car was equipped); that thereafter, and after a switching engine of the defendant had reached said transfer track, and after some employé of the defendant had discovered the removal of the said clevis pin and clevis, whereby the uncoupling chain on one end of said car was disconnected from the coupler thereof, said car was moved by the said switching engine of the defendant to a distance of 1 1/10 miles, above referred to, from said transfer track to defendant's said repair track, "for the sole purpose of making such repair there."

It is then stipulated that it would have been possible to send a repairman from said repair track to said transfer track with tools and materials of a character necessary to make such repairs, which said repairs could also have been made by the switching crew which had been sent to move said car from said transfer track, if the members thereof had had in their possession, or upon their engine (as they did not have at said time or place), any clevis and clevis pin of the size, type, and kind necessary to make such repairs.

It is provided in the Safety Appliance Act, as amended, that a common carrier hauling on its line any car "not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," shall be liable for the penalty sued for herein, and it is conceded that the defendant herein is liable as for an infraction of that statutory provision, but the claim is made that it is exempt from punishment therefor, because of the remedial amendment ingrafted upon the Safety Appliance Act in 1910 (36 Stat. 299), whereby it was provided that:

"Where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective * * * or insecure to the nearest available point where such car can be repaired, without liability for the penal-

ties imposed, * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

The sole question in the case, which is of importance because of the principle rather than of the amount involved, is whether or not, upon the discovery of an inhibited defect in the equipment of a car, the common carrier may haul the car in the usual and ordinary way from the place where the defect is first discovered to the nearest place where such repairs as are necessary, because of the existence of such defect, are usually and ordinarily made, in spite of the fact that with but little, if any, inconvenience or interference with the practicable operation of the carrier's business, such repair could have been made upon the ground, and without any necessity of moving the car or subjecting employés of the carrier to risk of injury. Mr. Justice Moody, of the United States Supreme Court, in construing the Safety Appliance Act, said:

"There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just." St. Louis, Iron Mountain & S. Railway Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061.

It is apparent to me from a careful reading of the Safety Appliance Act, together with its amendments, that Congress intended that an "absolute" duty was to be cast upon common carriers operating the usual instrumentalities of interstate commerce; that such absolute duty required of such common carriers the doing of the certain precise definite things specified in the statute; that the considerations impelling the requirement of these things were those looking to human safety and the protection of the lives of the thousands of employés engaged in and about the work incident to the carrying on of interstate commerce. Under such circumstances this court feels that considerations of "convenience," "practicability," or "expediency" should not be permitted to fritter away or lessen the most commendable purpose of the act in question, and that a defendant should not be permitted to claim the benefit of the remedial amendment above referred to, unless such defendant clearly and indisputably brings itself within the purview thereof. If such be the correct and rational interpretation of the entire act, then in order that the movement of a car, such as is involved herein, can be justified, it must be shown by the carrier that such movement was *necessary*, in order that the required repairs might be made, and that such repairs *could not be made* except at the repair point to which the car was moved. It will not suffice, in my judgment, to hold that the word "necessary" is the substantial equivalent of "convenient," or that it should be qualified by the phrases "practicably" or "economically"; so to hold would be to place convenience, practicability, and economy above human life, and that this court will not do.

It is clearly apparent, from the agreed statement of facts, that it would have been very easy for the defendant to have sent an appropriate repairman from its repair track to the transfer track, where the car in question was standing. It would have been equally easy, or pos-

sibly less so, if the engine had been made use of, for the switching crew to have sent to the repair track for the materials necessary to effectuate an adequate repair. It is suggested in the agreed statement of facts that the crew did not have in their possession, or upon their engine, a clevis and clevis pin of the size, type, and kind necessary to make the required repairs. It does not appear, however, that they did not have in some other place, to wit, upon the other end of the car in question, such clevis, or that they did not have at hand a different sized clevis or other instrumentality which could have been used for the precise repair then necessary. In any event, it does not appeal to the court that the movement of the car complained of by the government was necessary, in order that the repair could be made, nor that the repair could not, consistently with a proper operation of defendant's railway even, have been made, at the point where the defect was originally discovered.

Findings being unnecessary, judgment will be entered as prayed for by plaintiff.